```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | | |
|---|---|---|
| CHARLES WILCHER, | : | Civil Action No. |
| | : | 08-2723(NLH)(JS) |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| JOHN E. POTTER, | : | |
| Postmaster General, and | : | |
| UNITED STATES POSTAL SERVICE, | : | |
| Defendants. | : | |

**APPEARANCES:**

Jose Luis Ongay
521 S. Second Street
Philadelphia, PA 19147

   *Attorney for plaintiff*

Elizabeth Ann Pascal
Office of the United States Attorney
401 Market Street
4th Floor
Camden, NJ 08101

   *Attorney for defendant*s

**HILLMAN**, District Judge

    This matter has come before the Court on defendants' motion for summary judgment on plaintiff's claims for disparate treatment based on his race and gender.  For the reasons expressed below, defendants' motion will be granted.

## BACKGROUND

    In September 2000, plaintiff, Charles Wilcher, became a

"craft"[1] employee of the United States Postal Service.  He first served as a letter carrier, but in July 2006, he became a 204B acting supervisor of the Vineland Delivery and Distribution Center.  As a 204B supervisor, plaintiff retained his craft status, but he performed duties of a first-level supervisor.

On March 16, 2007, plaintiff was issued a Notice of Removal, which terminated his employment with the USPS.  The Notice of Removal charged plaintiff with improper conduct for being paid for eight hours on July 5, 2006 even though he had not reported for duty that day.  Through two formal complaints filed with the EEOC, a grievance filed by his union, and a three-day arbitration hearing, plaintiff challenged the basis for removal by maintaining that he did work on July 5, 2006.  Plaintiff explained that he did not perform his supervisor duties that day on the floor, but rather spent the entire day filing with the Vineland Postmaster in her office, behind closed doors or otherwise in an area where other USPS employees could not see him.[2]

An Office of Inspector General investigation ensued into plaintiff's explanation, and the arbitrator and plaintiff's

---

[1] A craft employee is one who is in a union bargaining unit.

[2] Plaintiff further explained why no one saw him that day: (1) no one saw his car in the parking lot because his mother drove him to and from work; (2) coming to and from lunch, he exited through the side door; and (3) the filing area was behind "cases" which blocked the view from the floor.

supervisors all determined it to be without merit, thus leading to plaintiff's discharge.  Plaintiff, however, insists that he worked on that date,[3] and claims that the USPS terminated his employment because is a black male.  As a result, plaintiff filed this action against the USPS[4] for unlawful discrimination based on his race and gender.[5]

Defendants have moved for summary judgment, arguing that plaintiff has failed to establish a prima facie case of race or gender discrimination.  Defendants also argue that even if plaintiff could meet his prima facie case, plaintiff has not sufficiently rebutted the USPS's reasons for discharge to prove

---

[3]During the OIG investigation, plaintiff stated that he manually entered his time the following day.  It was determined, however, that his time for July 5, 2006 was actually clocked automatically.  Plaintiff now argues that the fact that his time was entered automatically creates an act of omission, rather than an act of volition in defrauding the USPS.  Regardless of how his time was entered--whether automatically or by his own hand--the issue remains that he retained pay for eight hours that the USPS determined he did not actually work.

[4]Because the only proper party defendant in a Title VII suit is the head of the agency--in this case, John E. Potter, Postmaster General--plaintiff's claims against the United States must be dismissed. See 42 U.S.C. § 2000e-16(c).  As Potter was not personally involved in this matter, however, the Court will refer to Potter and the postal employees involved in this case generally as the USPS or "defendants."

[5]During the EEOC and union grievance process, and in his Complaint in this action, plaintiff also alleged that his termination was based on his religion--Muslim--and age. Plaintiff has since dropped those claims, as well as any claims based on the reassignment from 204B acting supervisor to letter carrier, which occurred prior to his termination.  He has also dismissed the state law tort claims asserted in this action.

it was really a pretext.[6]  Plaintiff argues in response that he has provided evidence sufficient to prove that he suffered from disparate treatment to not only meet his prima facie case, but to allow his case to go to trial before a jury.

## DISCUSSION

**A.    Jurisdiction**

This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-16(c), which provides that any federal government employee, "within 90 days of receipt of notice of final action taken by a department, agency, or unit . . . if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant."

**B.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied

---

[6]In its reply, the USPS also argues that summary judgment should be entered in its favor because of plaintiff's failure to provide a response to the USPS's statement of material facts not in dispute.  Although Local Civil Rule 56.1(a) requires a party opposing summary judgment to provide its own statement of undisputed facts, as well as a response to the moving party's statement of facts, and plaintiff initially failed to do so, he subsequently filed his responsive statement.  While we do not excuse plaintiff's procedurally error, we decline to rule in defendant's favor on that basis alone in light of plaintiff's ultimate compliance with the local rule.

4

that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56.

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported

motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

Plaintiff claims that he has suffered disparate treatment because of his race and gender.  Plaintiff claims that his termination for improper conduct because he was paid for a day that he purportedly did not work was really motivated by his race and gender, as demonstrated by how other, similarly situated, non-black male USPS employees were treated.[7]

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  A claim of race discrimination under Title VII uses the

---

[7]Plaintiff appears to conflate his race and gender into a single protected class.  The problem with this approach is that men are not a protected group.  Instead, for "reverse" discrimination--that is, claims that plaintiff had the unusual employer who discriminated against the majority--a slightly altered <u>McDonnell Douglas</u> analysis must be performed.  <u>See</u> <u>Iadimarco v. Runyon</u>, 190 F.3d 151, 155 (3d Cir. 1999).  Under that analysis, plaintiff must establish a prima facie case by presenting sufficient evidence to allow a factfinder to conclude the USPS treated some people less favorably than others based on sex.  <u>Id.</u> at 161.  Following the analysis of plaintiff's race discrimination claim, the Court will perform a separate analysis for his gender discrimination claim.

6

burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-05 (1974).  Under that framework, a plaintiff must first establish a *prima facie* case.  The elements of a *prima facie* case depend on the facts of the particular case, and it cannot be established on a one-size-fits-all basis.  Jones v. School Dist. of Philadelphia, 198 F.3d 403, 411 (3d Cir. 1999).  Typically, however, to prove a *prima facie* case of disparate treatment, a plaintiff must offer sufficient evidence that he was: (1) a member of a protected class, (2) qualified for the position, and (3) nonmembers of the protected class were treated more favorably than him.  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 318-19 (3d Cir. 2000) (citing Ezold v. Wolf, Block, Schorr and Solis Cohen, 983 F.2d 509, 522 (3d Cir. 1993)).

   Should Plaintiff establish a *prime facie* case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions.  "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.  The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the

7

plaintiff." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994). This is a light burden. <u>Id.</u>

Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of persuasion. <u>Goosby</u>, 228 F.3d at 319 (citing <u>Reeves v. Sanderson Plumbing Products Inc.</u>, 530 U.S. 2097 (2000)).

In this case, it is undisputed that plaintiff is a member of a protected class, and the USPS does not dispute that he was qualified for his position. In dispute, however, is whether plaintiff has provided enough evidence to show that nonmembers of the his protected class were treated more favorably than him so that he has established a prima facie case.

Plaintiff presents six letter carriers and the Vineland Postmaster as evidence of disparate treatment. He argues that these are non-black male, similarly situated individuals who received less harsh penalties, thus evidencing that his termination was a result of discrimination.

1. EF - a white male letter carrier at the Vineland Post Office who was caught drinking on the job, but was not

8

terminated.

2. MR - a Hispanic male letter carrier at the Vineland Post Office who was caught recording without permission a telephone conversation with the Postmaster, but was not terminated.

3. BL - an African American female letter carrier at the Vineland Post Office who brought a gun to the workplace, but was not terminated.

4. RP - a white male letter carrier at the Vineland Post Office who was terminated for misconduct, but prior to receiving his notice of removal, he first was given a warning and a suspension, as well as had a previous notice of removal "downgraded" to a 30-day suspension without pay.

5. GY - a white male letter carrier at the Vineland Post Office who was terminated for misconduct/failure to follow instructions.  Prior to this, however, GY received a notice of removal for urinating in front of children, but that notice was rescinded in favor of a last chance agreement.

6. JAK - a white female letter carrier at a different post office in the South Jersey district who was issued a notice of removal for unsatisfactory attendance, but

        that notice was rescinded, and she was permitted to retain her position, even though she also had a previous disciplinary record.

7. Vineland Postmaster - a Hispanic female who was also accused of getting paid for July 5, 2006 even though it was alleged that she did not actually work that day. She was initially demoted to the position of Supervisor of Customer Service, but she was subsequently returned to her position as Vineland Postmaster.

Defendants argue that plaintiff's evidence of disparate treatment is unavailing, as none of these individuals can be considered "similarly situated." Although the Third Circuit has not explicitly defined the standard for determining whether a person is similarly situated, the court has affirmatively cited cases from other circuits that hold that in order to be considered similarly situated, the plaintiff must show that he and the employees are similarly situated "in all relevant respects." Martinez v. International Broth. of Elec. Workers-IBEW Local Union No., 98, 352 Fed. Appx. 737, 741 (3d Cir. 2009) (citing Kline v. Kansas City, Mo., Fire Dept., 175 F.3d 660, 670-71 (8th Cir. 1999) ("similarly situated" means similar "in all relevant respects"); Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir. 1998) (same)); Proctor v. ARMDS Inc., 342 Fed. Appx. 848, 850 (3d Cir. 2009) (citing

Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)); Red v. Potter, 211 Fed. Appx. 82, 84 (3d Cir. 2006) (citing Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003) (stating that "a plaintiff must show that others similarly situated to him in all relevant respects were treated differently by the employer.") (internal quotation marks and citations omitted); Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994) (stating in order to show that an employee is "similarly situated," all of the relevant aspects of employment need to be nearly identical)).

Defendants point out that six of plaintiff's examples were disciplined as letter carriers, and although plaintiff retained his craft status while serving as a 204B supervisor, he was not acting as a letter carrier when he committed his infraction. Defendants argue that because plaintiff was acting as a supervisor and in a position of authority, he cannot be compared to a letter carrier. Furthermore, defendants argue that the six letter carriers' conduct was of a completely different nature than his, and therefore cannot be compared. Similarly, with regard to the Postmaster, even though she was charged with committing the same violation as plaintiff, she was in a more senior position than plaintiff and was subject to different discipline standards, implemented by a different set of managers.

The Court finds that plaintiff's evidence is not sufficient

11

to demonstrate disparate treatment to satisfy a prima facie case of race discrimination. First, none of the individuals described maintained the same position as plaintiff. Considerations of an employee's job duties are relevant to the discipline meted out for that employee's conduct. Plaintiff served in a supervisory position, with authority and responsibility above the level of a letter carrier, and therefore his improper conduct ostensibly has a greater impact on the integrity and operations of the organization. In contrast, a position superior to plaintiff's, such as the Postmaster, provides a separate set of considerations relevant to the disciplinary process. Thus, the only way to truly compare treatment of an employee is to compare it against a fellow employee of similar rank.

Second, regardless of the level of plaintiff's position, all but one example--the Postmaster--committed various infractions dissimilar to plaintiff's conduct. Comparing discipline for a letter carrier drinking on the job, urinating in public, and bringing a gun to work, is difficult to judge against each other, let alone compared to plaintiff's time card fraud. Additionally, the fact that three other letter carriers were subjected to successively more-serious discipline is irrelevant, particularly when the underlying improper conduct is unclear and uncomparable to plaintiff's conduct.

Third, plaintiff's listing of USPS employees and their

12

infractions does not support disparate treatment because five of the seven are minorities themselves. The purpose of showing that a non-minority in the same position who committed the same infraction and received different discipline is to evidence that race--and not some other reason--was the basis for that unequal treatment. Plaintiff's evidence shows that employees of all races and gender received various discipline for various improper conduct. To the extent that plaintiff believes that white males, Hispanic males, black females, Hispanic females, and white females are all treated more favorably than he as a black male, plaintiff's evidence is even less compelling. At the most, plaintiff's evidence shows that the discipline he received was specific to him, regardless of his race.

Furthermore, plaintiff could detail every disciplinary action implemented by the USPS, and find numerous examples of employees who received less-severe discipline than plaintiff. That, however, would also fail to demonstrate the causal connection between his race and his termination. It is a plaintiff's burden to prove that similarly situated persons were treated differently, Simpson v. Kay Jewelers, 142 F.3d 639, 645-46 (3d Cir. 1998), and plaintiff here has failed to do so.

While the failure to demonstrate a prima facie case would ordinarily end our analysis, the Court deems it necessary to proceed further. In defendants' statement of material facts not

in dispute, defendants state, "If a 204B acting supervisor is disciplined for an act or omission during his assignment as a 204B acting supervisor, he is disciplined as a craft employee, which is his permanent status." (Def. SOMF ¶ 6.) Plaintiff's notice of removal explains that the USPS found him to violate USPS Standards of Conduct, ELM Section 665.13, Discharge of Duties, which provides, "Employees are expected to discharge their assigned duties conscientiously and effectively," as well as ELM Section 665.16, Behavior and Personal Habits, which provides, in part, "Employees must not engage in criminal, dishonest, notoriously disgraceful, immoral, or other conduct prejudicial to the Postal Service." (Def. Ex. 12.)

It is unclear whether these provisions are applicable to all USPS employees, specific to craft employees, or only for supervisory employees. Moreover, it is unclear whether the requirement that plaintiff must be disciplined as a craft employee, rather than as a supervisor or other level of employee, effects the analysis of whether a letter carrier is indeed similarly situated, despite plaintiff's supervisory, non-letter-carrier duties.

Even though this issue does not necessarily impair the analysis of whether plaintiff has established a prima facie case of race discrimination--because plaintiff's proof fails for other reasons--in an abundance of caution, the Court will undertake the

14

McDonnell Douglas burden shifting analysis as if plaintiff had established a prima facie case.  As will be demonstrated below, however, the burden shifting analysis confirms the dearth of evidence to support an inference that race was the true motivation behind plaintiff's termination.

Under the burden shifting analysis, after a plaintiff has presented a prima facie case of race discrimination, an employer must articulate a legitimate, nondiscriminatory reason for the unfavorable employment decision.  In this case, the USPS's reason for terminating plaintiff's employment was because he was purposely paid for a day that he did not actually work.  After an extensive investigation by the OIG and USPS managers, it was determined that plaintiff's claim that he worked behind closed doors filing all day was an "incredulous excuse" and without any credible support.  Thus, because of plaintiff's improper conduct, he was fired.

The employer's light burden having been satisfied, the burden of production now rebounds to plaintiff, who must show by a preponderance of the evidence that the USPS's explanation was merely a pretext for its actions.  Plaintiff argues that because the USPS was incorrect in its assessment that he did not work on July 5, 2006, that mistake--coupled with his view that other employees with worse infractions received lighter penalties-- creates an issue of fact for the jury to decide concerning

15

whether his race was the real reason for termination. Even if the Court were to credit plaintiff's argument, it is still insufficient to defeat summary judgment.

To meet the standard of proving that defendants' reason for terminating his employment was a pretext, plaintiff must point "to some evidence, direct or circumstantial, from which a fact-finder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [the employer's] action." Foxworth v. Pennsylvania State Police, 228 Fed. Appx. 151, 158 (3d Cir. 2007) (citing Sheridan v. DuPont de Nemours & Co., 100 F.3d 1061, 1067 (3d Cir. 1996); Fuentes, 32 F.3d at 764)). However, "[t]o discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765.

Plaintiff has not provided any proof to demonstrate that the USPS did not believe that plaintiff did not work on July 5, 2006 like he maintained or that Plaintiff was terminated for any other reason than that one. The decision to terminate him was based on an OIG investigation and an internal investigation, which the

USPS found discredited plaintiff's explanation as to why no one saw him at work that day, and as to why the acting supervisor stated that plaintiff called her to inform her he would not be coming in that day.[8]

At most, plaintiff has demonstrated that he received a harsher penalty for the same conduct that was also perpetrated by the Hispanic female Postmaster, but that is not enough to support an inference that the USPS terminated plaintiff because he is African-American.[9]  Plaintiff may disagree with the USPS's decision, but "Title VII does not prohibit unfairness or wrongheaded decisions in the workplace."  Ramos v. EquiServe, 146 Fed. Appx. 565, 569 (3d Cir. 2005) (citing Fuentes, 32 F.3d at 765).  Ultimately, plaintiff has not provided evidence to warrant the inference that plaintiff's race had anything to do with his

---

[8] The only person who corroborated plaintiff's version was the Postmaster, who was also found to have not worked that day, despite her claim that she did.

[9] Plaintiff argues that any other discipline option--such as being removed from the 204B position, being ordered to reimburse the USPS, being issued a letter of warning, or being suspended for 30 days--"would have been an adequate penalty under the circumstances."  (Pl. Opp. at 24.)  This position is specious, because it appears that plaintiff maintains that any discipline was not warranted because he did not commit the infraction, and, thus, any disciple was motivated because of his race. Furthermore, even if plaintiff claims that his race motivated the termination, but not any hypothetical lesser punishment, simply because plaintiff feels that those options would have been more appropriate is insufficient to meet his burden to defeat summary judgment. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (providing that a party opposing summary judgment must do more than just rest upon mere allegations).

termination.  Consequently, summary judgment must be entered in favor of defendants on plaintiff's Title VII race discrimination claim.

As noted above, in combination with his race, plaintiff also claims that he was discriminated against because he is a man. Sex discrimination against males has been dubbed "reverse discrimination."  See Iadimarco v. Runyon, 190 F.3d 151, 155 (3d Cir. 1999).  In Iadimarco, the court defined a modified burden-shifting analysis that differs slightly from the usual test under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that modified test, plaintiff must establish a prima facie case by presenting sufficient evidence to allow a factfinder to conclude that the USPS treated some people less favorably than others based on sex.  Iadimarco, 190 F.3d at 161.  The rest of the burden shifting analysis is the same as the standard described above for plaintiff's race discrimination claims.  See id.

Here, plaintiff's proof fails for his gender discrimination claim for the same reasons as his race discrimination claims. Plaintiff's only evidence that males were treated less favorably than females is BL, the African American female letter carrier at the Vineland Post Office who brought a gun to the workplace, JAK, a white female letter carrier at a different post office in the South Jersey district whose a notice of removal for

18

unsatisfactory attendance was rescinded, and the Vineland Postmaster, a Hispanic female who was also accused of time card fraud for July 5, 2006.  None of these women were terminated. Although on its own this evidence could be an example of disparate treatment, since plaintiff, as a man, was terminated, plaintiff's other evidence--four men who were not terminated for various behaviors–belies any claim that any reverse discrimination occurred.

Furthermore, even if the Court continued with the modified burden shifting analysis, as discussed above, plaintiff has not presented any evidence that could raise an inference of gender discrimination.  The USPS terminated plaintiff for his improper conduct.  Plaintiff has not shown any "background circumstances that support the suspicion that the defendant is that unusual employer who discriminates against the majority." Murphy v. Hous. Auth. and Urban Redev. Agency, 32 F. Supp. 2d 753, 764-65 (D.N.J. 1999), aff'd, 208 F.3d 206 (3d Cir. 2000) (discussed in Miller v. New Jersey, 144 Fed. Appx. 926, 929-930 (3d Cir. 2005)).  Adequate background circumstances which might support an inference of reverse discrimination fall into two categories: "(1) evidence indicating that [the USPS] has some reason or inclination to invidiously discriminate against the majority; and (2) evidence indicating that there is something 'fishy' about the facts of the case at hand that raises an inference of

19

discrimination." Id. at 764 (citations omitted).  Plaintiff's evidence contradicts the first category, and it does not demonstrate anything "fishy" to satisfy the second category. Consequently, plaintiff's gender discrimination claim fails as well.

## CONCLUSION

Plaintiff has not provided sufficient evidence to defeat summary judgment on his race and gender discrimination claims. Nothing about plaintiff's proffered evidence shows that he was treated differently from other similarly situated USPS employees to warrant the inference that his termination was motivated by his race or gender.  Without providing such evidence, plaintiff cannot overcome the USPS's legitimate reasons for terminating plaintiff's employment.  Consequently, summary judgment must be entered in favor of defendants.  An appropriate Order will issue.


Date: June 18, 2010                       s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.